William P. Deni, Jr.
J. Brugh Lower
Stephen R. Donat
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiffs Merck*
*Sharp & Dohme B.V., N.V.*
*Organon, Organon USA LLC,*
*and Organon LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCK SHARP & DOHME B.V., N.V. ORGANON, ORGANON USA LLC, and ORGANON LLC, <br><br> Plaintiffs, <br><br> v. <br><br> XIROMED PHARMA ESPAÑA, S.L. and XIROMED, LLC, <br><br> Defendants. | Civil Action No. 25-02254 (CCC) (LDW) <br><br> *Document Electronically Filed* |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.    Xiromed Has Not Pled Inequitable Conduct with Particularity. ...................3

II.   Xiromed Has Not Pled Knowledge of Materiality or Deceptive Intent. ........7

III.  Xiromed Has Not Pled a Material Omission or Misrepresentation. ...........10

      A.    Organon did not omit any material reference. ..................................11

      B.    Organon did not commit any material misrepresentation. ................13

CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

**Page**

CASES

*Am. Regent, Inc. v. Somerset Therapeutics, LLC*,
2025 WL 2318989 (D.N.J. Aug. 12, 2025) .............................................5, 11, 14

*Beazer East, Inc. v. Mead Corp.*,
412 F.3d 429 (3d Cir. 2005) ...............................................................................12

*Cal Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ...........................................................10, 12, 13

*Catalyst Pharms., Inc. v. Jacobus Pharms. Co., Inc.*,
2022 WL 22897850 (D.N.J. May 26, 2022)...................................................1, 14

*Cellectis S.A. v. Precision Biosciences*,
883 F. Supp. 2d 526 (D. Del. 2012)....................................................................9

*Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*,
2010 WL 598693 (M.D. Fla. Feb. 17, 2010)........................................................9

*Depomed, Inc. v. Purdue Pharma L.P.*,
2017 WL 2804953 (D.N.J. June 28, 2017)...........................................................7

*Eagle View Tech., Inc. v. Xactware Sols., Inc.*,
325 F.R.D. 90 (D.N.J. 2018)................................................................................3

*Enzo Life Sciences, Inc. v. Digene Corp.*,
270 F. Supp. 2d 484 (D. Del. 2003)...................................................................14

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ................................................................*passim*

*Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co.*,
2024 WL 5117412 (D. Del. 2014).......................................................................3

*Luv n' Care, Ltd. v. Laurain*,
  98 F.4th 1081 (Fed. Cir. 2024) ..........................................................................14

*Murthy v. Missouri*,
  603 U.S. 43 (2024)...........................................................................................5

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007) ..........................................................................14

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) ..........................................................................12

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
  614 F.3d 1354 (Fed. Cir. 2010) ...........................................................................9

*Semiconductor Energy Lab'y v. Samsung Elecs. Co., Ltd*,
  204 F.3d 1368 (Fed. Cir. 2000) ..........................................................................15

*Senju Pharms. Co., Ltd. v. Apotex, Inc.*,
  921 F. Supp. 2d 297 (D. Del. 2013).......................................................................3

*Shire LLC v. Amneal Pharms., LLC*,
  802 F.3d 1301 (Fed. Cir. 2015) ..........................................................................15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ....................................................................*passim*

*Warner Chilcott Co., LLC v. Amneal Pharms., LLC*,
  2013 WL 6627694 (D.N.J. Dec. 20, 2013)...............................................5, 6, 15

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 13 | U.S. Patent No. 4,012,497 (Schopflin) |
| 14 | U.S. Patent Publication No. 2003/0153983 (Miller) |

## INTRODUCTION

Xiromed's opposition (ECF No. 56, "Opp.") confirms that its inequitable conduct claim fails the high pleading standard for such claims. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). The crux of Xiromed's theory is that, during prosecution of the '037 patent, Organon's attorneys characterized prior art references in a way that Xiromed says is inconsistent with how, ***years later***, *different* attorneys described *different* references during a litigation proceeding about *different* patents owned by a *different* company with entirely *different* claims. Based on nothing but its own say-so, Xiromed then asserts that the characterizations made by the second, later set of attorneys were correct and the characterizations by the first set of attorneys were false and intended to deceive the Examiner. (Opp. at 5.)

But that sort of effort to twist attorney argument—especially between *different* attorneys—and to stack inference upon innuendo is hardly the stuff of a viable inequitable conduct claim. Unless a claimant can show that a patentee hid or distorted material facts in a way that thwarted the Examiner from independently evaluating prior art—and Xiromed does not—attorneys' arguments "*cannot* give rise to a claim of inequitable conduct." *Catalyst Pharms., Inc. v. Jacobus Pharms. Co., Inc.*, 2022 WL 22897850, at *6 (D.N.J. May 26, 2022) (emphasis added).

Moreover, Xiromed's latest salvo *admits* many other fatal shortcomings in its counterclaim:

- Xiromed acknowledges that "inequitable conduct must be committed by individuals, not entities." (Opp. at 15.) Yet it copies copious sections of its counterclaim accusing "Counterclaim Defendants/Plaintiffs" and "their attorneys and the named inventors," writ large, of misconduct. (*Id.* at 16-27.)

- Xiromed admits allegations of knowledge and intent to deceive must be "reasonably based" upon "specific facts." (*Id.* at 14.) But all or the vast majority of its allegations are based solely on "information and belief" with no factual support. (*Id.*)

- After Organon pointed out that three prior art references Xiromed faulted Organon for not providing the Examiner—Thiery 2000, Botash 1997, and U.S. Patent No. 5,788,980—were cumulative, Xiromed has all but dropped its arguments about those references. (*Id.* at 27-31.)

Xiromed cannot rectify these substantial flaws with its counterclaim, and this Court should dismiss with prejudice.

## ARGUMENT

The standard for inequitable conduct is exacting, and courts routinely dismiss at the pleading stage. (*See* ECF No. 50-1, "Mot." at 14 n.3.) Xiromed must plead that a specific individual affiliated with Organon "made a deliberate decision" to

misrepresent or withhold a "material" reference that the individual "knew . . . was material." *Therasense*, 649 F.3d at 1290 (emphasis omitted). And because inequitable conduct sounds in fraud, the counterclaim "must identify the specific who, what, when, where, and how of the material misrepresentation or omission." *Exergen*, 575 F.3d at 1328. Xiromed did not meet this standard in its counterclaim, and its opposition brief does nothing to remedy the critical defects that require dismissal.

## I.    Xiromed Has Not Pled Inequitable Conduct with Particularity.

Compliance with Rule 9(b) does not mean simply listing names, dates, and references. A claimant must connect the dots between "*a specific individual*," his knowledge that material information has been withheld or misrepresented, and his "intent to deceive." *Id.* at 1328-29 (emphasis added). Pleadings that refer generally to entire organizations or groups of individuals, including "attorneys" or "inventors," are insufficient. *See id.*; *Senju Pharms. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013); *Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co.*, 2024 WL 5117412, at *7 (D. Del. 2014). Pleadings must also explain how "relevant" segments of the allegedly "withheld or false information" impacted "the germane claims and claim terms." *Eagle View Tech., Inc. v. Xactware Sols., Inc.,* 325 F.R.D. 90, 94 (D.N.J. 2018). Xiromed fails at all of these requirements.

***Who.*** Xiromed fails to show "who" engaged in inequitable conduct. (Mot. at

31-33.)  Although its counterclaim lists individuals who "[u]pon information and belief" were allegedly "responsible for the inequitable conduct," it fails to link these individuals to particular acts of misconduct or explain how each individual's misconduct affected patent proceedings.  (ECF No. 44, "Am. Countercls." 31 ¶ 30.) Rather, Xiromed theorizes that *Organon* knew about the alleged materiality of certain prior art during prosecution of the '037 patent because the company allegedly made inconsistent arguments in the later Microspherix *inter partes* review (IPR) proceedings.  (Opp. at 4.)

Xiromed's opposition brief demonstrates the error.  Rather than claim any particular individual knew, intended, or misrepresented, Xiromed asserts that the corporate entity or its attorneys or named inventors writ large did so.  To take just a few examples:

- Xiromed alleges "*Merck* took the exact opposite position" in IPR proceedings than its "attorneys and named inventors took . . . during prosecution of the '037" and theorizes the company could not believe both things.  (*Id.* at 4) (emphasis added); (*see also id.* at 17, 31.)

- The brief describes characterizations of prior art as "*Merck's* misrepresentations."  (*Id.* at 32) (emphasis added).

- In a cursory paragraph on deceptive intent, Xiromed says only that "*Merck's* attorneys and named inventors were not 'playing fair and square' with the

Examiner during prosecution." (*Id.* at 32) (emphasis added).

Xiromed responds by pointing to various names listed in its counterclaim. (*Id.* at 15.) But this response only confirms the pleading's deficiencies. Xiromed says that attorneys Hess, Chisholm, and Fair may have made certain statements to the Examiner,[1] but does not say these attorneys had knowledge of alleged materiality or deceptive intent—or even knew of the prior art. (*Id.*) Instead, Xiromed says that, "on information and belief," *one of the inventors* (Dr. De Graaf) "was aware of" the prior art, and Xiromed does not allege that he made any of the challenged statements. *Id.* Yet the law is clear that an inequitable conduct claim must fail if the only individual aware of materiality never made a misleading statement. *See Warner Chilcott Co., LLC v. Amneal Pharms., LLC*, 2013 WL 6627694, at *9 (D.N.J. Dec. 20, 2013); *Am. Regent, Inc. v. Somerset Therapeutics, LLC*, 2025 WL 2318989, at *7 (D.N.J. Aug. 12, 2025). Viewed most charitably, that is all Xiromed alleges.

Unable to satisfy the knowledge requirement, Xiromed cannot meet Rule 9(b)'s pleading requirements, and its counterclaim should be dismissed. *See, e.g.*, *Am. Regent*, 2025 WL 2318989, at *8 (inequitable conduct claim failed Rule 9(b) where the claimant did not allege the only specific individual mentioned knew of the

---

[1] These details are not part of Xiromed's counterclaim; instead, Xiromed asks the Court to consult its exhibits to determine which speaker made which challenged statement. (Opp. at 15.) But Rule 9(b)'s pleading burden falls on Xiromed, not this Court. "[J]udges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (cleaned up).

allegedly withheld information); *Warner Chilcott*, 2013 WL 6627694, at *9 (dismissing inequitable conduct claim that indicated individuals knew of prior art but did "not allege facts pertaining to . . . when or how he made any misrepresentations or omissions").

***What and Where***. Organon demonstrated that Xiromed failed to plead "what" and "where" (Mot. at 21-22) by failing to identify the specific "claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found," *Exergen*, 575 F.3d at 1329. Xiromed's response—that "the inequitable conduct relates to all of the claims of the '037 patent" (Opp. at 16) (emphasis omitted)—illustrates the problem. Xiromed speaks broadly about the '037 patent without grappling with the nuances of the claimed inventions (such as weight percentages and components), the precise arguments Organon made to distinguish the relevant prior art (Mot. at 23-30), or the differences between the '037 patent and the Microspherix patent at issue in the later, unrelated litigation (*id*. at 36-37). For instance, Xiromed wrongly claims that Organon argued "that it would not have been obvious to incorporate a radiopaque substance into a long-acting contraceptive device." (Opp. at 4.) In fact, Organon acknowledged prior art incorporating barium sulfate into long-acting contraceptive devices such as intrauterine devices (IUDs), but argued a subdermal implant is an entirely different device that presents different questions. (Mot. at 5-9.) Xiromed's

attempts to elide these key issues are a concession.

***Why and How.*** Because Xiromed refuses to grapple with the differences between the '037 patent and the Microspherix patent, it cannot explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. Instead, copying six pages worth of material from its counterclaim and exhibits, Xiromed simply falls back on its claim that the references must have been material because Organon attorneys cited them in the Microspherix IPR proceedings against a different patent. (Opp. at 21-27.) Since a reference's "various teachings may be relevant to different applications for different reasons," that is not nearly enough. *Exergen*, 575 F.3d at 1330.

Failing all that, Xiromed asks the Court to ignore its pleading deficiencies because it has "put [Organon] on notice of Xiromed's allegations." (Opp. at 32.) But notice is not enough; Rule 9(b) "require[s] detailed factual averments and not merely notice pleading with respect to such claims." *Therasense*, 649 F.3d at 1304-05 (Bryson, J., dissenting) (summarizing *Exergen*); *accord Exergen*, 575 F.3d at 1329; *Depomed, Inc. v. Purdue Pharma L.P.*, 2017 WL 2804953, at *4 (D.N.J. June 28, 2017).

## II.    Xiromed Has Not Pled Knowledge of Materiality or Deceptive Intent.

In addition to its failure to plead with particularity, Xiromed has also failed to

plead an individual affiliated with Organon "knew of [a] reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. Xiromed states only that "[u]pon information and belief" Organon's attorneys and inventors had the requisite knowledge and intent. (Opp. at 14; *see* Am. Countercls. 37-38, 40 ¶¶ 46, 48, 50, 56.) But, as Xiromed admits (Opp. at 14), pleading on "information and belief" suffices "*only if* the pleading sets forth the specific facts upon which the belief is reasonably based," *Exergen*, 575 F.3d at 1330 (emphasis added). Xiromed's counterclaim does not. As discussed, broadside allegations against groups like "attorneys" or "inventors" do not suffice, and Xiromed pleads no facts suggesting that the individuals who made statements to the Examiner knew that they were misrepresenting the prior art, that they knew any allegedly withheld prior art was material, or even that they knew the allegedly omitted prior art existed.

Instead, Xiromed's only "evidence" of mental state is that other attorneys took a supposedly contradictory position about the state of the art during the later Microspherix IPR proceedings involving *different* asserted prior art references and *different* challenged claims of a *different* patent with a different priority date. (*See* Opp. at 1-2, 4-5, 17-19, 21-26, 27-28, 31-32, 36.) That is not enough to reasonably infer knowledge of materiality or deceptive intent. Regarding the statements themselves, as a matter of law, an attorney "is free to argue vigorously in favor of

patentability without being subject to allegations of inequitable conduct." *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360-61 (Fed. Cir. 2010); *Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 535 (D. Del. 2012) ("Attorneys prosecuting a patent should be able to correct mistakes, change their opinion, or adjust their argument to convince the examiner without risking invalidation of the patent by a later finding of inequitable conduct.").

As for the use of different references in the later Microspherix IPR related to the different patent, there may be many other reasons that these were not disclosed during prosecution of the earlier '037 patent. "The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent." *Exergen*, 575 F.3d at 1331; *see also Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*, 2010 WL 598693, at *4 (M.D. Fla. Feb. 17, 2010) (dismissing claim alleging nothing more than that the applicant disclosed a reference during one patent prosecution but not another). And if the inference is unfounded even as between related applications from the *same* inventor, then it cannot be supported by pitting statements about Organon's own patent against later statements about a different company's patent.

Further, the attorneys who prosecuted the '037 patent are different from the attorneys who later challenged the Microspherix patent. (Mot. at 34.) Even if the

Microspherix IPR attorneys believed certain references to be material and a certain interpretation of those references to be correct, that would not support the inference that an *entirely different set of attorneys* shared those beliefs, much less years earlier and in a different setting. That is especially so when there is no overlap between the IPR litigation and prosecution of the '037 patent. Xiromed has no response to this dispositive point.

Plus, the patents at issue in the Microspherix IPR proceedings differ significantly from the '037 patent. (Mot. at 35-37.) It does not matter that Xiromed may believe those distinctions to be without a difference. For statements made in the later IPR proceedings to bear on the '037 patent prosecuting attorneys' earlier knowledge or intent, the Court would have to infer that '037 patent prosecuting attorneys believed that references of the IPR were material *to that patent* and that they had the requisite intent regarding those references. That is not a permissible inference from Xiromed's scant pleading.

## III. Xiromed Has Not Pled a Material Omission or Misrepresentation.

Xiromed's counterclaim should be dismissed for the additional reason that it fails to identify a material omission or misrepresentation. An omission or misrepresentation is material only if the Examiner would not have allowed the claim but for the intentional deception. *Therasense*, 649 F.3d at 1291. Thus, an omitted reference cannot be material if "it is merely cumulative." *Cal Inst. of Tech. v.*

*Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022).

Xiromed theorizes that Organon tricked the Examiner by omitting some prior art references about the use of barium sulfate in IUDs and vaginal rings and by misrepresenting others.  (Opp. at 27-28.)  But Organon's motion to dismiss explained how its extensive back-and-forth with the Patent Office centered on that very point.  (Mot at 5-9.)  The issue that Xiromed alleges was hidden was in fact front and center.

Xiromed has no good response, so it challenges the Court's authority to assess whether the allegedly withheld references were cumulative on a motion to dismiss.  (Opp. at 27, 31.)  Yet there is no dispute that "several cases" have "looked at evidence from the file history indicating the examiner considered the prior art to assess materiality on a motion to dismiss."  *Am. Regent*, 2025 WL 2318989, at *11 & n.7 (listing cases).  This Court can, too.

### A.    Organon did not omit any material reference.

In its counterclaim, Xiromed focused on three prior art references that were included in the Langer Declaration during the Microspherix litigation but were not raised to the Examiner during the earlier '037 prosecution: Thiery 2000, Botash 1997, and the '980 patent, each of which discusses the inclusion of barium sulfate in IUDs and vaginal rings.  (Am. Countercls. 36 ¶¶ 44-45.)  As Organon explained, the Examiner already knew that drugmakers had used barium sulfate to make IUDs

radiopaque, and in fact debated the relevance of this prior art with Organon. (Mot. at 23-24.) Additional references would be cumulative at best. *Cal Inst. of Tech.*, 25 F.4th at 991; *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1575 (Fed. Cir. 1997). Apparently seeing the writing on the wall, Xiromed fails to respond to most of Organon's arguments about these references, "waiv[ing], as a practical matter anyway, any objections." *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 437 n.11 (3d Cir. 2005).

Instead, using overheated rhetoric, Xiromed accuses Organon of "misleading . . . this Court" by stating that Thiery 2000, Botash 1997, and the '980 patent were about IUDs, not implants, because Organon described IUDs as implants during the Microspherix IPR. (Opp. at 30-31.) Xiromed misses the point. The Examiner ultimately was persuaded that this prior art did not render the invention of the '037 patent obvious because that invention was specifically directed to an implant capable of maintaining the desirable hormone release profile without an undesirable amount of barium sulfate leaking into the patient's body. (Mot. at 5-9, 23.) This reasoned decision had nothing to do with whether an IUD can be categorized as an "implant," and everything to do with the Examiner's thorough understanding of how the art around IUDs differed from the '037 patent.

Now, Xiromed puts all its eggs in the basket of a different reference, Schopflin, that was mentioned only in passing in its counterclaim and not even

12

attached as an exhibit.  (Am. Countercls. 36 ¶ 45; Opp. at 15, 26-27, 29-31.)  This argument does not fare any better.  Schopflin (Ex. 13) is *not as analogous* as the art the Examiner considered and would be cumulative.  *Cal. Inst. of Tech.*, 25 F.4th at 991.  The Examiner considered the De Nijs reference covering the IMPLANON® birth-control implant with etonogestrel—the closest prior art reference to the '037 patent—and prior art that disclosed the use of barium sulfate in multilayer polymer implantable devices, such as Miller.  (Mot. at 5-9); Ex. 14 (Miller) at [0042].  Schopflin, although containing teachings relating to general drug implants and barium sulfate, does not disclose etonogestrel.  Ex. 13 (Schopflin) at 3:15-17, 6:68-7:4, 7:41-43.

In any event, Xiromed's Rule 9(b) and *Exergen* failures apply equally to Schopflin.  Xiromed fails to adequately plead the "who" of the specific individual who was aware of Schopflin and its alleged materiality and intentionally deceived the Examiner by withholding it.  Xiromed fails to plead the "what" and "where" by not tying Schopflin's disclosures to any specific claim limitation.  And Xiromed's lone offhand reference to Schopflin in the counterclaim does not indicate "why" and "how" withholding it affected the Examiner's patentability determination.

### B.    Organon did not commit any material misrepresentation.

Xiromed's remaining argument is that Organon's attorneys misled the Examiner regarding references that were actually disclosed and discussed during

prosecution. (Am. Countercls. 38-44 ¶¶ 51-65; Opp. at 35-37.) But "[i]t is settled law that attorney argument about a reference the Patent Office actually considered cannot give rise to a claim of inequitable conduct." *Catalyst Pharms.*, 2022 WL 22897850, at *6 (emphasis omitted); *see also Am. Regent*, 2025 WL 2318989, at *14 ("'[C]herry-picked quotes' alone cannot be the basis of a material misrepresentation in an attorney's presentation to the USPTO, especially when the references at issue were actually considered by the patent examiner."). Organon cannot be held liable for inequitable conduct simply because Xiromed disagrees with its interpretation of these references.

Xiromed implicitly concedes as much, instead invoking a line of cases allowing inequitable conduct claims to proceed based on attorney conduct that went far beyond good-faith argument.[2] (Opp. at 28, 33-35.) The attorneys in *Nilssen v. Osram Sylvania, Inc.*, failed to disclose a conflict of interest, claimed a false effective priority date, failed to pay required maintenance fees, hid ongoing litigation, and failed to identify relevant prior art. 504 F.3d 1223, 1227-28 (Fed. Cir. 2007). The attorneys in *Luv n' Care, Ltd. v. Laurain* "with[eld] a video" squarely contradicting their description of prior art. 98 F.4th 1081, 1097 (Fed. Cir. 2024). The applicant

---

[2] In *Enzo Life Sciences, Inc. v. Digene Corp.*, the district court declined to dismiss solely because, under the weak pre-*Twombly* pleading standard, it could not "conclude with certainty, at this juncture, that [the plaintiff]" could "prove no set of facts in support of its claim which would entitle it to relief." 270 F. Supp. 2d 484, 490 (D. Del. 2003).

in *Semiconductor Energy Lab'y v. Samsung Elecs. Co., Ltd.* provided only a "partial translation" of a reference written in Japanese. 204 F.3d 1368, 1375-76 (Fed. Cir. 2000). And *Warner Chilcott* summarized other cases finding inequitable conduct when an attorney "made statements or withheld information that would have prevented the examiner from accurately judging the prior art provided." 2013 WL 6627694, at *8. This case is not remotely similar. Xiromed concedes that the Examiner had all of the allegedly misrepresented references in full; Organon did not hide a video, translation, excerpt, or anything else.

Xiromed is left to argue that the '037 patent was too technical for the Examiner, leaving her unable to evaluate the disclosed prior art independently. (Opp. at 35.) That is unfair to the Examiner, who is "assumed to have some expertise in interpreting the references and to be familiar from [her] work with the level of skill in the art." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015). Indeed, Federal Circuit precedent is clear that "deference . . . is due" to the Examiner and she must be "presumed to have properly done [her] job." *Id.*

## CONCLUSION

For the reasons in this and Organon's opening brief, the Court should dismiss Xiromed's inequitable conduct counterclaim with prejudice and strike its affirmative defense.

Dated:  October 9, 2025                    s/ William P. Deni, Jr.
        Newark, New Jersey                 William P. Deni, Jr.
                                           J. Brugh Lower
                                           Stephen R. Donat
                                           **GIBBONS P.C.**
                                           One Gateway Center
                                           Newark, New Jersey 07102
                                           (973) 596-4500
                                           wdeni@gibbonslaw.com
                                           jlower@gibbonslaw.com
                                           sdonat@gibbonslaw.com

                                           *Of Counsel:*

                                           Anthony M. Insogna
                                           **JONES DAY**
                                           4655 Executive Dr.
                                           San Diego, CA 92121
                                           (858) 314-1200

                                           Sarah A. Geers
                                           Zachary J. Marshall-Carter (*pro hac vice*)
                                           **JONES DAY**
                                           250 Vesey Street
                                           New York, NY 10281
                                           (212) 326-3939

                                           Tracy A. Stitt (*pro hac vice*)
                                           **JONES DAY**
                                           51 Louisiana Ave NW
                                           Washington, DC 20001
                                           (202) 879-3939

                                           Marlee R. Hartenstein (*pro hac vice*)
                                           **JONES DAY**
                                           500 Grant St #4500
                                           Pittsburgh, PA 15219
                                           (412) 391-3939

Jason G. Winchester (*pro hac vice*)
Matthew J. Hertko (*pro hac vice*)
Sachin M. Patel (*pro hac vice*)
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606

*Attorneys for Plaintiffs*
*Merck Sharp & Dohme B.V., N.V.*
*Organon, Organon USA LLC, and*
*Organon LLC*